UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSICA LAVALLEY, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 23-30135-MGM |
| SKYLINE RECOVERY SERVICE, INC., | * |
| PATRICK K. WILLIS CO., INC. d/b/a | * |
| AMERICAN RECOVERY SERVICE d/b/a | * |
| SKIPBUSTERS, and CAPITAL ONE AUTO | * |
| FINANCE, INC., | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(Dkt. No. 33, 37)

June 24, 2025

MASTROIANNI, U.S.D.J.

I.   INTRODUCTION

Jessica Lavalley ("Plaintiff") brings this action against Skyline Recovery Service, Inc., Patrick K. Willis Co., Inc. d/b/a American Recovery Service d/b/a Skipbusters, and Capital One Auto Finance, Inc. ("Defendants"), arising out of the repossession of a vehicle Plaintiff financed through Capital One Auto Finance. Plaintiff asserts claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), wrongful repossession under the Massachusetts Uniform Commercial Code ("UCC"), violation of Mass. Gen. Laws ch. 93A, and conversion. Defendants have filed motions for summary judgment. The parties' dispute boils down to a single issue: whether the repossession of Plaintiff's vehicle over her repeated oral objections—but without physical obstruction or threats of

violence—could be found by a jury to constitute "breach of the peace" under Article 9 of the UCC, such that the repossession was not lawful. The court concludes that a reasonable jury, viewing the facts in the light most favorable to Plaintiff, could find a breach of the peace under the circumstances presented here. Defendants' motions for summary judgment are therefore denied.

## II. BACKGROUND

On August 6, 2021, Plaintiff financed a purchase of a 2020 Toyota Corolla through a loan from Capital One Auto Finance. (Dkt. No. 41-3 ¶ 1.) Plaintiff subsequently fell behind on her car payments and defaulted on the loan. (*Id.* ¶ 2.) On January 6, 2023, Capital One Auto Finance sent Plaintiff a Repossession Notice, which stated that Plaintiff's vehicle had been assigned for repossession. (Dkt. No. 36-3.) However, Plaintiff testified that she never received this notice because she had moved to another residence. (Dkt. No. 41-2 at 11-12.)

Capital One Auto Finance has a contractual relationship with American Recovery Service to coordinate repossession of vehicles in default. (Dkt. No. 41-3 ¶ 3.) American Recovery Service, in turn, has a contractual relationship with Skyline Recovery Service to repossess vehicles on its behalf. (*Id.* ¶ 4.)

On April 15, 2023, Bryan Kelley, an agent for Skyline Recovery Service, was driving a tow truck equipped with license-plate reading cameras to identify vehicles assigned for repossession in Pittsfield, Massachusetts. (*Id.* ¶¶ 7-8.) Kelley's license-plate reading cameras notified him of a "hit" on Plaintiff's vehicle, which indicated it had been assigned to be repossessed. (*Id.* ¶ 8.) Plaintiff remained in default on the loan at that time. (*Id.* ¶ 6.) Kelley then confirmed the repossession order by phone, license plate, and vehicle identification number. (*Id.* ¶ 9.) Plaintiff's vehicle was parked on a public street in front of her apartment building (which also included a business on the first floor) on 28 Bank Row. (Dkt. No. 41-2 at 15-19.)

As Kelley began the repossession process, the vehicle's car alarm went off; Plaintiff looked out her apartment window and saw a tow truck parked behind it. (*Id.* at 14, 19.) Plaintiff then went outside and confronted Kelley. (*Id.* at 14.) Plaintiff asked Kelley what he was doing and explained that she "had a payment plan with Capital One." (*Id.*)[1] Plaintiff repeatedly told Kelley he could not take the vehicle, begged him not to do so, and cried on the public street. (Dkt. No. 41-2 at 14, 20, 28.)[2] The confrontation occurred on a busy Saturday morning in downtown Pittsfield with many people around, creating an embarrassing public spectacle. (*Id.* at 28.) Plaintiff's sixteen-year-old daughter was also watching from the apartment window and witnessed the incident. (*Id.*) According to Plaintiff, the car was not yet on the tow truck lift or otherwise hooked up to the tow truck when she confronted Kelley and asked him to stop the repossession. (*Id.* at 14, 19, 29-30.) Plaintiff also testified that Kelley requested the vehicle's key and threatened Plaintiff that she would have to pay an additional $500 to $800 if she did not turn over the key. (*Id.* at 15, 20-21, 29-30.)[3]

Kelley allowed Plaintiff to retrieve some of her personal belongings from the vehicle, but Plaintiff testified at her deposition that he did not give her enough time to get everything she wanted. (*Id.* at 21.) After the repossession, Plaintiff called both Skyline Recovery Service and American Recovery Service in an attempt to recover the rest of her property from the vehicle, but the car had already been sold at auction and Plaintiff never obtained those belongings. (*Id.* at 21-23.)

---

[1] Plaintiff testified at her deposition that she had called Capital One Auto Finance shortly before the repossession and set up a payment plan which involved a local church making a payment on Plaintiff's behalf. (*Id.* at 12-13.)

[2] Defendants argue that Plaintiff's allegation of orally objecting to the repossession is not "material" for purposes of summary judgment. However, the court does find this fact to be highly material to the breach of the peace issue, as discussed below. The court also notes that Kelley testified at his deposition he did not remember Plaintiff telling him to stop the repossession (Dkt. No. 36-4 at 11), but at summary judgment the court must credit Plaintiff's evidence. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014) ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).

[3] Kelley testified at his deposition that he had already put dollies underneath Plaintiff's vehicle in order to move it before towing it (as it was pulled in to a parking spot) and that he was in the process of securing the steering wheel when Plaintiff confronted him. (Dkt. No. 36-4 at 25-26.) Kelley also testified at his deposition that he did not ask Plaintiff for the vehicle's key. (*Id.* at 49.)

3

III.    STANDARD OF REVIEW

"The function of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Burt v. Bd. of Trs. of Univ. of R.I.*, 84 F.4th 42, 59 (1st Cir. 2023) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 422 (1st Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Thus, "a nonmovant can forestall summary judgment by 'present[ing] definite, competent evidence' demonstrating the existence of a genuine dispute about a material fact." *Murray v. Kindred Nursing Ctrs. W. LLC*, 789 F.3d 20, 25 (1st Cir. 2015) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law,'" and disputes are genuine when a reasonable jury considering the evidence "'could resolve the point in the favor of the non-moving party.'" *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017) (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)). At summary judgment, "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in her favor." *Carlson v. Univ. of New England*, 899 F.3d 36, 43 (1st Cir. 2018). But the court may not evaluate the credibility of witnesses or weigh the evidence, as those questions are reserved for the jury. *Id.*; *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

IV.    ANALYSIS

Plaintiff brings four claims: violation of the FDCPA, 15 U.S.C. § 1692f *et seq.*, against Skyline Recovery Service and American Recovery Service (Count I); breach of the peace repossession under the UCC, Mass. Gen. Laws ch. 106, § 9-609, against all Defendants (Count II); unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 9 against all Defendants (Count III); and common law conversion against all Defendants (Count IV). The viability of each claim depends on

4

whether Defendants had a present right to possession of the vehicle under Massachusetts law. That question, in turn, depends on whether the repossession occurred "without breach of the peace" under Mass. Gen. Laws ch. 106, § 9-609.

Under the FDCPA, debt collectors are prohibited from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest . . . or . . . the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6).[4] As the parties agree, courts "look to state law to determine whether a repossessor had a present right to possess the property at the time it was seized" for purposes of the FDCPA. *Neathery v. Lucky 13 Recovery Inc.*, 2023 WL 7924149, at *3 (D. Mass. Nov. 16, 2023) (quoting *Richards v. PAR, Inc.*, 954 F. 3d 965, 968 (7th Cir. 2020)); *see Shue v. JMAC Distribution, LLC*, 745 F. Supp. 3d 3, 5-7 & n.3 (D. Mass. 2024).

The governing UCC statute provides that "[a]fter default, a secured party . . . may take possession of the collateral . . . without judicial process, if it proceeds without breach of the peace." Mass. Gen. Laws ch. 106, § 9-609. "Like its UCC counterpart, the Massachusetts statute does not define the term 'breach of [the] peace.'" *Neathery*, 2023 WL 7924149, at *4. The UCC Comments state that the statute "does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts." Uniform Commercial Code § 9-609 cmt. 3.

Defendants argue there was no breach of the peace here, as a matter of law, because the repossession occurred on public, not private, property; no police were involved; and there was no

---

[4] "To establish a claim under the FDCPA, a plaintiff must show (1) that she was the object of collection activity arising from consumer debt, (2) that defendants are debt collectors as defined by the FDCPA, and (3) that defendants engaged in an act or omission prohibited by the FDCPA." *Neathery v. Lucky 13 Recovery Inc.*, 2023 WL 7924149, at *2 (D. Mass. Nov. 16, 2023). Defendants Skyline Recovery Service and American Recovery Service state in their brief that they "do not dispute the first two elements of the FDCPA claim," leaving only the question of whether they engaged in an act prohibited by the FDCPA. (Dkt. No. 35 at 5.)

5

physical altercation. According to Defendants, a verbal objection by the debtor without more—such as threats or actual violence or physical obstruction—is not sufficient. Moreover, Defendants argue the court should only look to Kelley's actions, and not Plaintiff's, in determining whether there was a breach of the peace, citing *McCarthy v. First Credit Resources, Inc.*, 702 F. Supp. 3d 366 (W.D. Pa. 2023). In response, Plaintiff argues that repossession over the debtor's verbal objection *is* sufficient to constitute breach of the peace, as many courts have held. Plaintiff argues that a contrary rule—requiring more intense obstruction to rise to the level of breach of the peace—unnecessarily encourages violence and risks public safety.

As the *Shue* court explained, there is limited Massachusetts caselaw regarding "breach of the peace in the repossession context and . . . guidance from other jurisdictions is 'especially relevant in the context of the UCC, which seeks to make uniform the law among the various jurisdictions.'" *Shue*, 745 F. Supp. 3d at 7 n.7 (quoting *Reading Co-Operative Bank v. Suffolk Constr. Co., Inc.*, 984 N.E.2d 776, 782 n.7 (Mass. 2013)). The court therefore looks beyond Massachusetts to decisions interpreting other states' identical (or nearly identical) UCC provisions. *See Premier Cap., LLC v. KMZ, Inc.*, 984 N.E.2d 286, 289 (Mass. 2013) ("The Legislature has stated that the UCC 'shall be liberally construed and applied to promote its underlying purposes and policies.' . . . The stated purposes of the UCC include the simplification, clarification, and modernization of commercial law . . . and the promotion of uniform commercial laws across jurisdictions." (quoting Mass. Gen. Laws ch. 106, § 1-103(a))).

Courts across the country are divided on the question presented here, with many cases holding that repossession in the face of a verbal objection by the debtor, without more, is not sufficient to breach the peace and many other cases holding that such verbal objections can be sufficient. The parties disagree as to which side comprises the majority approach. The parties also disagree as to whether the facts in certain cases are distinguishable from the facts here and whether

6

certain statements in cases are dicta. The court, for its part, has examined the relevant cases, spanning many years and across different jurisdictions. Ultimately, the court must make an "informed prophecy" of "the rule" the Massachusetts Supreme Judicial Court ("SJC") "would most likely follow under the circumstances." *Aubee v. Selene Fin. LP*, 56 F.4th 1, 4 (1st Cir. 2022) (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir. 1996)). The court may "seek guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." *Id.* (quoting *Blinzler*, 81 F.3d at 1151). After considering these authorities, this court concludes the SJC would likely recognize that a jury could find a breach of the peace under these facts, viewed in the light most favorable to Plaintiff.

As an initial matter, this court concludes the SJC would likely find, as most courts have, that breach of the peace in the civil repossession context "is broader than the criminal law definition." *Giles v. First Virginia Credit Servs., Inc.*, 560 S.E.2d 557, 565 (N.C. App. 2002); *see Shue*, 745 F. Supp. 3d at 7 n.8 ("The Court is not convinced by JMAC's contention that a criminal disturbance of the peace is substantially synonymous with a civil claim for breach of the peace in a repossession action. . . . The Court therefore looks to relevant case law in the latter category."); *Droge v. AAAA Two Star Towing, Inc.,* 468 P.3d 862, 871 (Nev. App. 2020) (declining to apply the criminal definition of "breach of peace" because the Nevada legislature directed "courts to liberally construe and apply Nevada's U.C.C. [t]o make uniform the law among the various jurisdictions," and "proceed[ing] to examine how other jurisdictions have construed and applied the term 'breach of the peace' for purposes of applying their self-help repossession statutes" (internal quotation marks omitted)); *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 29 (Tenn. Ct. App. 1991) ("We can find no support for the . . . decision to circumscribe [the Tennessee UCC provision] by limiting 'breach of the peace' to its criminal context. The Code's drafters intended the term to have a broader meaning."); *Wallace*

*v. Chrysler Credit Corp.,* 743 F. Supp. 1228, 1232 (W.D. Va. 1990) ("A limitation of the meaning of the term 'breach of the peace' as it is contained in Article 9 of the Uniform Commercial Code to the circumstances set out in the [criminal] statute would, however, be too restrictive."). In this court's view, it would substantially diminish the UCC's uniformity goal if the civil breach of the peace repossession provision simply served as a cross-reference to each state's discrete criminal breach of peace statute. Moreover, had that been the intention of the UCC drafters, they likely would have made such a cross-reference explicit, rather than affirmatively leaving the definition of breach of the peace "for continuing development by the courts." Uniform Commercial Code § 9-609 cmt. 3.[5]

It is also likely the SJC would reject the approach endorsed by *McCarthy*, 702 F. Supp. 3d 366, of looking solely to the actions of the repossession agent for purposes of determining whether there was a breach of the peace. *See id.* at 369 (holding the actions of the plaintiff-debtor are irrelevant because "[t]he law imposes liability where *the defendant* causes the breach of the peace" (emphasis added)). As Plaintiff points out, other Pennsylvania courts reject *McCarthy*'s reasoning, which clearly represents the minority approach. In *Gonzalez v. VJ Wood Recovery, LLC*, 726 F. Supp. 3d 399 (E.D. Pa. 2024), the court explained that *McCarthy*'s focus on the repossessor's conduct alone was inconsistent with an earlier Pennsylvania decision it cited, *Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272 (E.D. Pa. 2016), as well as a plain reading of the statute: "Nowhere does the statute broaden a secured creditor's right to repossess in the face of a breach of the peace so long as it does not contribute to that breach of the peace." *Gonzalez*, 726 F. Supp. 3d at 403. This court finds *Gonzalez*—which also recognized that repossession in the face of a mere "verbal objection may constitute a breach of the peace"—persuasive. *Id.* at 404.

---

[5] New York is an example of the minority approach which measures UCC breach of the peace repossession by the standards set forth in the state's criminal statute, based on New York precedent requiring such a linkage. *See, e.g., Labadie v. NU Era Towing & Serv., Inc.*, 2023 WL 8708421, at *2 (2d Cir. Dec. 18, 2023) (summary order). There is no similar Massachusetts caselaw and, for the reasons explained, this court believes the SJC would reject such a requirement and construe the UCC provision as broader than the criminal statute.

As *Gonzalez* intimated, the language of the statute appears to be purposefully broad: "After default, a secured party . . . may take possession of the collateral . . . without judicial process, if it proceeds without breach of the peace." Mass. Gen. Laws. ch. 106, § 9-609. Accordingly, as Plaintiff argues, if the UCC drafters "wanted to cabin this limitation to specifically only those breaches caused by actions of the secured creditor, [they] could have said so" by, for example, authorizing self-help repossessions if the secured creditor "proceeds without breach*ing* the peace." (Dkt. No. 41 at 18 (emphasis added).) *See Yeldell v. Wells Fargo Bank, N.A.*, 2011 WL 13287064, at *8 (N.D. Ala. Mar. 2, 2011) (explaining that the UCC provision "does not distinguish between a breach of the peace that is caused by the debtor and a breach of peace caused by the creditor"); *Williams v. Republic Recovery Serv., Inc.*, 2010 WL 3732107, at *3 (N.D. Ill. Sept. 16, 2010) (explaining that, under the UCC, "the repossessor must use a procedure . . . that does not *involve* a breach of the peace" (emphasis added)).

Moreover, looking to the actions of both the debtor and the repossessor is consistent with the UCC's goal of preserving public safety and tranquility. *See Hollibush v. Ford Motor Credit Co.*, 508 S.W.2d 449, 455 (Wisc. Ct. App. 1993) ("The underlying theory of the UCC cases is that a verbal objection to a repossession is the precursor to violence, and that it should not be necessary for a debtor to resort to violence to provide the breach of the peace necessary to defeat a self-help repossession."). Indeed, "[r]epossessions are emotional matters," *id.*, and are "inherently dangerous," *Droge*, 468 P.3d at 871, and ignoring the debtor's conduct means ignoring a likely source of escalation.

Consistent with the UCC's rejection of a specific definition of breach of the peace, "most courts simply resolve breach-of-the-peace cases without adopting a definition of the term itself, instead focusing on the specific factual circumstances of each case." *Neathery*, 2023 WL 7924149, at *4 (quoting *Droge*, 468 P.3d at 871); *Rivera*, 178 F. Supp. 3d at 279 ("[M]ost jurisdictions make

determinations of what constitutes a breach of the peace on a case by case basis."); *see also Droge*, 468 P.3d at 871 ("Indeed, a breach of the peace has been described as 'a legal concept with shifting boundaries not unlike the relatively elastic legal concept of probable cause.'" (quoting *Hopkins v. First Union Bank of Savannah*, 387 S.E.2d 144, 145 (Ga. Ct. App. 1989))). Nevertheless, some common threads emerge from the caselaw.

Overall, courts recognize the UCC repossession provision seeks to accomplish the following, potentially conflicting objectives:

> (1) to benefit creditors in permitting them to realize collateral without having to resort to judicial process; (2) to benefit debtors in general by making credit available at lower costs; and (3) to support a public policy discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence.

*Droge*, 468 P.3d at 874 (quoting *Clarin v. Minn. Repossessors, Inc.*, 198 F.3d 661, 664 (8th Cir. 1999)). By authorizing a repossession only "if it can be done without a breach of the peace," the UCC seeks "to protect the interest of not only the secured party, but also the debtor and the general public." *Id.* Accordingly, the "goal for any test for determining whether conduct constitutes a breach of the peace must be to balance the stated objectives of self-help repossessions while minimizing the potential for violence." *Id.*; *see Clarin*, 198 F.3d at 664 ("Because these objectives represent conflicting interests of both parties and of the public, we must balance these goals."). However, as the *Hollibush* court explained (quoting Blackstone), the goal of preventing violence should be paramount:

> [A]s the public peace is a superior consideration to any one man's private property; and as, if individuals were once allowed to use private force as a remedy for private injuries, all social justice must cease, the strong would give law to the weak, and every man would revert to a state of nature; for these reasons it is provided that this natural right of recaption shall never be exerted where such exertion must occasion strife and bodily contention, or endanger the peace of society.

*Hollibush*, 508 S.W.2d at 453 (quoting 3 W. Blackstone, Commentaries *4-5).

10

Courts have identified a number of common factors used in determining whether there has been a breach of the peace during a repossession, including: the use of law enforcement; violence or threats of violence; the location of the repossession; whether there was a verbal confrontation or express or constructive consent to the repossession; the reaction or disturbance of third parties; and whether the repossession agent used deception. *See Rivera*, 178 F. Supp. 3d at 279; *Clarin*, 198 F.3d at 664; *Wiley v. On Point Recovery & Transp., LLC*, 2024 WL 4870514, at *2 (D. Ariz. Nov. 22, 2024); *Giles*, 560 S.E.2d at 564; *see also Shue*, 745 F. Supp. 3d at 7 (favorably citing factors listed in *Rivera*). In addition, courts generally consider only the conduct which occurred "at or near and/or incident to seizure of property," rather than events which occurred after the vehicle has already been repossessed. *Chapa v. Traciers & Assocs.*, 267 S.W.3d 386, 395 (Tex. App. 2008) (quoting *Jordan v. Citizens & S. Nat'l Bank of South Carolina*, 298 S.E.2d 213, 214 (S.C. 1982)); *see also Rivera*, 178 F. Supp. 2d at 279-80; *Droge*, 468 P.3d at 872.

"[C]ourts routinely conclude that a breach of the peace occurs where actual violence or physical resistance is present during a repossession." *Droge*, 468 P.3d at 871; *see Shue*, 745 F. Supp. 3d at 8 (holding that "hooking the [vehicle] to the tow truck and proceeding to lift it up, with Shue in the car, more than adequately denote[s] such a breach for present purposes"). "However, courts nonetheless widely recognize that violence is not a precondition to a breach of the peace under self-help repossession statutes." *Droge*, 468 P.3d at 872. Again, courts reason that "[t]he driving force behind the 'breach of the peace' standard is to avoid precursors to violence—such as open disagreement—that often escalate into actual violence." *Darren Trucking Co. v. Paccar Fin. Corp.*, 2019 WL 3945103, at *3 (D. Md. Aug. 20, 2019); *see Hollibush*, 508 N.W.2d at 453 (Wisc. Ct. App. 1993) ("Once a debtor unsuccessfully demands that a repossessing creditor desist, the only way to enforce that demand is with a breach of the peace, something the common law, the UCC and the [Wisconsin Consumer Act] prohibit."); *State v. Indrisano*, 613 A.2d 1375, 1380 (Ct. App. Ct. 1992), *rev'd on other*

11

*grounds*, 640 A.2d 986 (Conn. 1994) ("A rule that an oral protest is sufficient to foreclose nonjudicial repossession is wise because it does not beckon the repossessing creditor to the brink of violence." (quoting J. White & R. Summers, Uniform Commercial Code (2d Ed.1980) § 26–6, pp. 110–11)); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[A] disagreement over repossession ought not have to rise to the level of an assault before a breach is deemed to occur."). This court concludes the SJC is likely to endorse this approach and not foreclose relief simply because the situation did not devolve into physical obstruction or violence.

Granted, it is difficult to draw the precise line between the type of conduct which does and does not breach the peace in the repossession context. And this court does not purport to establish bright lines or overarching rules in light of the case-by-case nature of the question, *see Rivera*, 178 F. Supp. 3d at 279, and because federal courts must use restraint when "a state's highest court has not spoken directly" on a state-law issue, *Forbes v. BB&S Acquisition Corp.*, 22 F.4th 22, 25 (1st Cir. 2021) (citing *Aronstein v. Massachusetts Mut. Life Ins. Co.*, 15 F.4th 527, 534 (1st Cir. 2021)). There may be situations in which a particularly weak or half-hearted objection to a repossession would not be sufficient to breach the peace. For example, in *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171 (Ill. App. Ct. 1996), the debtor, "who was in his underwear, rushed outside and hollered, 'Don't take it,'" to the repossessor when he heard the repossession of his vehicle occurring at night, but "[t]he repossessor did not respond and proceeded to take the vehicle." *Id.* at 1172.[6] The facts in *Koontz* are not as dramatic as the facts here, as there was simply no engagement between the debtor and the repossessor. Still, this court predicts the SJC would reject the *Koontz* court's statement suggesting a debtor must "impl[y] violence at the time of or immediately prior to the repossession by holding a

---

[6] Moreover, in *Clarin*, "although Ms. Clarin never gave her express consent [to the repossession], she was provided the opportunity to contact [the bank], the police, and the repossession company," and "[a]fter making these calls, with Minnesota Repossessors waiting more than an hour, she no longer protested the repossession." *Clarin*, 198 F.3d at 664. The Eighth Circuit thus "construe[d] Ms. Clarin's actions as a constructive consent." *Id.*

weapon, clenching a fist, or even vehemently arguing toe-to-toe with the repossessor so that a reasonable repossessor would understand that violence was likely to ensue if he continued with the vehicle repossession." *Id.* at 1174. In this court's view, such reasoning only encourages more extreme and physically dangerous or violent behavior, contrary to the overriding goal of preserving public safety and tranquility. This court also predicts that the SJC would likely reject the similar reasoning of *Chavez v. Ford Motor Credit Co. LLC*, 2024 WL 4893918 (D. Ariz. Nov. 26, 2024), where the court held there was no breach of the peace during the repossession, even though the plaintiff-debtor repeatedly verbally objected, because "neither repossessor threatened [the plaintiff] with physical violence"; there was no "physical contact between the parties" and the plaintiff "did nothing to physically prevent the repossession," such as physically obstructing the repossessors; and the repossessors initially towed the vehicle from a public parking lot to the plaintiff's home to allow the removal of personal items from the vehicle.

In the end, this court is not prepared to conclude that an oral confrontation, in the absence of additional factors suggesting imminent violence, is never sufficient under the UCC to breach the peace. Here, the court finds there is a triable jury question as to whether a breach of the peace occurred during the repossession. Crediting Plaintiff's deposition testimony, the vehicle was not yet hooked up to the tow truck when she confronted Mr. Kelley and begged him not to take it. The repossession occurred on a busy Saturday morning in downtown Pittsfield; although the vehicle was parked on public (and not private) property, the incident created an embarrassing public spectacle which onlookers, including Plaintiff's daughter from the apartment window, observed. Plaintiff made repeated pleas to Mr. Kelley not to take the car, including begging, crying, and explaining that she had made an arrangement with Capital One Auto Finance. Although Plaintiff was permitted to get some of her personal property from the vehicle, she testified at her deposition that Mr. Kelley did not give her enough time to retrieve it all. Moreover, Plaintiff testified at her deposition that Mr.

Kelley tried to coerce her to hand over the key by threatening additional charges if she did not do so. The court concludes a jury could view all these facts (in the light most favorable to Plaintiff) and reasonably find a breach of the peace.

A contrary ruling—that as a matter of law, no reasonable jury could find a breach of the peace here—would send the message that debtors are required to take more extreme (and likely dangerous) measures to stop a repossession under the Massachusetts UCC. The SJC is unlikely to endorse such an approach, which unnecessarily risks public safety during these already-fraught repossessions.

The court therefore denies summary judgment as to the FDCPA and wrongful repossession claims. Moreover, because the parties agree that Plaintiff's other claims—violation of Mass. Gen. Laws ch. 93A and common law conversion—turn on this same breach-of-the-peace issue, the court denies summary judgment as to those claims as well.

IV. CONCLUSION

For these reasons, the court DENIES Defendants' motions for summary judgment. (Dkt. Nos. 33, 37.)

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge